The Judges delivered their opinions.*
JUDGE COALTER:
I am of opinion, that a bequest of a female slave and her increase, without any other word, or anything else in the will, to shew that children of such slave, then born, were intended, or probably intended to pass by the bequest, is not to be construed, ex vi termini, to be a bequest of such children, so as to require some restrictive word, as future, in order to prevent such enlarged construction. If this were the case, grandchildren, I presume, would also pass; as they would be the progeny or offspring of the slave bequeathed.
On the contrary, and especially where the children are grown, have come into use as labourers on the farm, or attendants in the house, having known names in familiar use, by which they could be easily described, the word increase would rarely be resorted to. as descriptive of the persons so intended to be bequeathed. The word children or family would most generally he used, if their names were not known, or for any other cause, not specified; and this is the more reasonable construction, because the word ’'‘increase may well be, and most generally is, intended to cover children bora after the will, and before the death of the testator, and which is frequently made more apparent by prefixing the word future;- but it may still mean this, without such restrictive word; or it may be thrown in by the scrivener as a necessary word, in his estimation, to pass the whole interest. 1 believe it is sometimes so used by unskilful persons, even in bills of sale of female slaves; as ways, water-courses, &c. are used in conveyances of real estates.
In the case of Reno v. Davis, 4 Hen. & Munf. 283, it appeared pretty clearly, that the testator intended to make some disposition of the whole of his slaves. Even those intended to be sold, were not thrown into the residuum generally, but were directed to be sold or hired “to those that they like;” and he did dispose of those in -dispute, either by giving them to the plaintiff, as the increase of Sib, or by disposing of them as part of the residuum, by the word remains. He directed certain slaves to be sold or hired as aforesaid, and the stock, household furniture, and remains, and the money arising from the sale, alter deducting legacies and paying debts, to be divided, &c. And the question was, whether these children, one at the breast, were intended to be described and disposed of, by the word remains? This word, it was well observed, could be satisfied by the kitchen furniture and plantation utensils, and that if these slaves were contemplated as part of the residuum, they would be more likely to be specified, than the stock and household furniture. Yet in this case, some of the Court had considerable doubts. One Judge relies very much on the answer of one of the executors, who was also a residuary legatee, and who refused to contest the claim. All admitted, that the testator did not intend to die intestate as to these children, but they passed either by the one clause or the other. Another Judge, considering it not clear, even under all the circumstances of that case, permitted considerations of humanity *to turn the scale; and the third, on the will itself, without the testimony, considered that the testator did not intend that they should pass and be divided with the stock and remains.
In the case before us, the testator intended the greater part, if not the whole, of his personal estate, to be sold, except what he gave to his wife; as he charges it with monies to be raised and put to interest, and legacies, to the amount, perhaps, of from four to five thousand dollars. To *484 raise this sum, as we may presume, the executors were about to sell, as is stated in the bill, 15 or 20 slaves, including those in controversy. Besides 500 acres of land, (being his home plantation, which he devised in fee to his wife,) the testator gave her the slave Jenny, one third .of his stock, half his grain and fodder, and half of the household furniture; and it may have required the greater part, if not the whole, of the slaves, to raise the monies aforesaid
The broad proposition which, it appears to me, must be contended for in this case, to wit: that a bequest of a female slave and her increase, is a bequest of her and her progeny, as well those in being as those to be born thereafter, unless the enlarged operation of that word shall be restricted by the word future, or by a bequest of part of the progeny to some one else, so as thus to evince a restricted use of that term, it seems to me, cannot be sustained. The term increase, appears to me to mean future offspring, rather than past; as rents, issues and profits of land. The word children would be more generally used as descriptive of persons.
The evidence in relation to the condition of the slaves, and which I think may properly be looked at, does not appear to me to alter the construction contended for. The youngest of the slaves in controversy was, at the time of making the will, 14 or 15 years old. The mother was about 40; and after an intermission of several years, had again been pregnant two or three years before the making *of the will. So that, I think her possible future increase was more probably intended, than to pass slaves of that age, without naming them; or those words may have been thrown in by the scrivener as aforesaid.
The testimony of the witness, as to the conversation with the appellee, a few hours before the death of the testator, and his observations in reply thereto, I think it would be of very dangerous consequence to admit. But, the observations of the testator do not shew that he heard what was said in relation to the slaves in controversy, but rather the reverse; for, if he did, why restrict the advice to sell Jenny only? It would be dangerous indeed, in the extremity of a testator, to permit expressions to be drawn from him, in relation to his will, so as to alter its fair import. If he heard all that was said, and as his wife said so, he may have supposed he had so made his will; or finding it to be her desire, he may have wished it should be so interpreted. But, in either case, the just and reasonable interpretation of the will ought not thus to be changed.
On the whole, I think the decree must be reversed, and the bill dismissed.
JUDGE CABELL:
The question in this case, is, on the construction of the following clause, in the will of John Puller, deceased: “I give to my beloved wife, Ann Puller, 500 acres of land, including my present dwelling, and a negro woman, named Jenny, and her increase, one third part of all my stock, and half the grain and fodder, and one half of the household furniture.” At the date of the will, the negro woman Jenny had two children, Garrett and Icy; the youngest of whom was then about 14 years old. Jenny herself was, at that time, about the age of forty; and it is alledged in the bill, (which, being a bill of injunction, was sworn to by Mrs. Puller,) that she had- had no child for at least 14 years before the. date of the will, and in all probability, *never would have another, which was known to the testator. There is no satisfactory testimony opposing the allegations of the bill. The question is, whether, by the clause aforesaid, Garrett and ley, born before the will, passed with their mother, under the term increase?
There is no case which settles the abstract import of the term increase, as applied to the request of a female slave. The case of Reno’s ex’r. v. Davis and wife, 4 Hen. & Munf. 283, was decided by a Court consisting of three Judges. Judge Roane expressly declined giving any opinion on this point. Judge Tucker was in favor of a restricted, and Judge Fleming in favor of an enlarged, construction; the former confining it to future increase, the latter making it equivalent to offspring; and it is obvious that, that case was decided, not on any general or established import of the term increase; but, on the particular intention of the testator, as manifested by the circumstances of the case.
There is not only no case fixing the import of the term increase, but it is most certain that, when taken abstractedly, it is variously understood, even among Judges. Chancellor Wythe and Judge Fleming, gave it an enlarged, and Judge Tucker, and the Judge who has preceded me, give it a restricted, interpretation. T also am inclined to believe that it is generally used in the restricted sense, so as to embrace future increase only; and although it is quite common to add expressly the term future; yet, that is done out of abundant caution, to remove all doubt on the-subject. In the case of a will, therefore, bequeathing a negro woman and her increase, if there be nothing in the will itself, nor in the extrinsic testimony, to shew the particular sense in which the testator intended to use the term increase, I should think it ought to be construed in the same manner, as if the bequest had been expressly, of the woman and her future increase.
But, even if the term increase, when taken abstractedly, as aforesaid, had an established meaning, we should. *nevertheless, in all cases growing out of wills, construe it according to the sense in which the testator intended to use it. Much more are we bound to dó so, when, as before observed, it is a word variously used, and therefore of doubtful and equivocal import.
In what sense, then, was it used in this will? Was it intended to embrace the previous, or was it confined to future increase?
It was contended by the counsel for the appellee, that this is one of that class of cases in which we may Resort to evidence of the declarations of the testator, for the *485 purpose oí collecting liis intention; and the case of Reno’s ex’r. v. Davis and wife, was referred to, as an authority on that point. I am by no means certain, that a majority of the Court, in that case, intended to express such an opinion. That case was decided on its particular circumstances; circumstances, which well justified the decision. But, if the two Judges intended to express the opinion imputed to them, it is an opinion to which 1 cannot yield my assent. I think Mr. Wickham correctly stated the rule; that the declarations of the testator as to his intentions, are admissible only to explain a latent ambiguity, or to rebut an equity. A different rule would repeal the statute requiring wills to be in writing.
For the purpose of ascertaining the intention of the testator, in the use of words of doubtful or equivocal import, we must, in the first place, look through the whole will. If the intention still remain doubtful, we may receive the evidence of extrinsic circumstances, which serve to throw light on the subject. Thus, it is not only proper, but necessary, to enquire sometimes into the circumstances of the testator, as in the case of Kerman v. Johnson, Styles’ Rep. 281, 293; Moor v. Price, 3 Keble, 49; and Cooper v. Williams, Prec. Ch. 71; sometimes into the value of the property, as in Bucher’s Case, Gouldb. 99; Reak v. Lee, 1 Freem. 479, 2 Equ. Cas. Abr. 298; and Cooper v. Williams, before referred to; sometimes into the state and *condition of the testator’s family, as in Wyld’s Case, 6 Rep. 16, and sometimes into the state and condition of the property, as for instance, that the property bequeathed was a female slave, the mother of an infant child at the breast, as was the case in Reno’s ex’r. v. Davis and wife. And I will add, that in the case of a word of such equivocal import as the term increase, very trivial circumstances will turn the scale; and to this effect, I think the case of Reno’s ex’r. v. Davis and wife, a very strong authority. The case before us is stronger than that just referred to. Here, the mother had nearly approached the age of sterility, and, moreover, had had no child for more than 14 years preceding the date of the will; facts well known to the testator. Yet, he bequeaths her and her increase. He intended something by the term increase. Did he mean future children; of whom there was so little probability that there ever would be any? Or, did he mean the children which she then had? I am clearly of opinion, that the latter was his intention. This construction is not weakened by the fact, that the testator was a man of large fortune; was a husband without children, making for his wife a provision different from that to which the law entitled her, and with which, it was important to the views of the testator, that she should rest satisfied. He gives the wife a tract of land; and, if the construction of the appellant prevail, he gives her one negro only, and separates that one from her children. The term increase, if used by the testator in the sense in which even Judges have said it may be legitimately used, would embrace and carry the children with the mother, to the wife of the testator. Under all the circumstances of this case, I cannot doubt it was his intention thus to use it; and I therefore think the decree should be affirmed.
*The PRESIDENT:
In what sense the testator used the word increase, in the bequest of Jenny to his wife, Ann Puller, is the only question in this case. The case of Reno v. Davis, &c. 4 Hen. & Munf. 283, is not a direct authority on this point. Judge Tucker, only inclined to the opinion, that the term increase was generally used in a restricted sense. Judge Roane, would not decide on its abstract meaning; and Judge Fleming, relied on other parts of the will, as explanatory of the sense in which it was used in that case, and concurred with the other Judges in attributing to it, a general, and not a restricted, meaning. Where there is nothing in the will itself, which ought first to be resorted to, nor in the parol evidence as to the character and situation of the property, I should concur with Chancellor Wythe, in the case cited, that it included the whole offspring, past and future, of the slave bequeathed. The frequent use of the restrictive word future, in deeds and wills, would lead to this conclusion. H the testator had inserted the word future in the bequest of Jenny and her increase, any parol evidence to enlarge the sense of the word increase, and include her two children, Icy and Garrett, would be inadmissible. It would be in contradiction to the expressed intention of the testator, and not explanatory of an ambiguity. The term increase cannot be understood to mean future increase generally, or the parol evidence in this case would be inadmissible. Nor can it at all times be considered ambiguous, because, taking it in that sense, there might be nothing in the will or in the admissible parol evidence, to explain it; in which case, the bequest would be ineffectual. Giving.it the extended sense, subject to explanations to be drawn from the will itself, or from parol evidence of the character spoken of, is the safer course. From the will, I think nothing can be extracted to change that sense. From the parol evidence, that Jenny, the mother of Icy and Garrett, the slaves in controversy, was *forty years of age, and had had no child for many years before the date of the will, it is to be inferred, that the testator used the word increase in its broadest sense. He could have had little prospect, in making a provision for his wife, of any future increase. The fact, if true, that she had been pregnant a year before the date of the will, does not impair this inference. The evidence of the conversation with the testator, just before his death, which is of a very doubtful character, and perhaps ought not to be admitted to prove that he meant to include Icy and Garrett, in the bequest of Jenny and her increase, need not be relied on. There being nothing in the will, nor in the parol proof, to restrict the meaning of the word increase, to future increase, \ am of opinion, that the decree ought to be affirmed.

JtrneBs Cabk and Gbisen, absent: the latter of whom decided the cause as Chancellor.
The case was argued before .Tunan Cakb came into the court.